(No. 34894.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN ALDEN, Plaintiff in Error.

*Opinion filed January 23, 1959.*

John L. Roach, of Chicago, for plaintiff in error.

Latham Castle, Attorney General, of Springfield, and Benjamin S. Adamowski, State's Attorney, of Chicago, (Fred G. Leach, William H. South, Francis X. Riley, and John T. Gallagher, of counsel,) for the People.

Mr. Justice Klingbiel delivered the opinion of the court:

In 1954 John Alden, referred to herein as petitioner, was tried by jury in the criminal court of Cook County for the crime of murder, found guilty, and sentenced to the penitentiary for a term of 14 years. He filed a petition in the trial court under the Post-Conviction Hearing Act, which was denied after a hearing. We allowed a writ of error and appointed counsel. Briefs were filed, the cause was orally argued and is now before us for decision.

The post-conviction petition alleged that the testimony of one Gerald Matthews at petitioner's trial was false and perjured and that the State had knowledge of such perjury at the time of the trial. The petition also alleged the petitioner's constitutional rights were violated in other respects. However, no evidence as to these allegations was presented at the post-conviction hearing and they were not urged on the petition for writ of error and are not argued in the briefs. We will therefore confine our attention to the charge

that the State knowingly used perjured testimony to convict petitioner.

Petitioner was tried and convicted for the murder of one Robert Fagan. The evidence at the original trial showed that petitioner and Fagan had been riding in an automobile with Matthews and two other men. Petitioner and Fagan got into an argument and petitioner left the automobile at his house and walked up the driveway. Fagan got out of the car and followed petitioner and before Fagan reached the house petitioner turned to face him, some words were exchanged, and petitioner shot Fagan. When Fagan fell to the ground, petitioner stepped forward, pointed the gun down at Fagan and shot him again. The foregoing facts were undisputed. Matthews testified at the original trial that at the time the first shot was fired Fagan was standing still. He testified at the post-conviction hearing that this testimony was false and in fact Fagan was advancing toward petitioner at the time the shot was fired. He also testified at the hearing that the assistant State's Attorney who was in charge of the prosecution of the case had interviewed him prior to trial and had discussed with him the testimony he had given before the grand jury. He had testified before the grand jury that Fagan was advancing toward petitioner at the time of the shooting and the assistant State's Attorney kept asking him whether he wanted to change this testimony. He explained to Matthews that if Fagan was standing still at the time of the shooting the State would have a good murder case but if he was advancing toward petitioner their case would not be so good. At that time Matthews was threatened with prosecution under certain indictments which were pending against him and was advised that things would go easier for him if he changed his testimony to say that Fagan was standing still at the time of the shot. Matthews testified at the hearing that because of the threat of prosecution under the pending indictments and also because of the promise of leniency if

he would change his testimony, he testified falsely at the trial. It was brought out on cross-examination at the hearing that Matthews had signed a statement on the day after the shooting which did not say one way or the other whether Fagan was advancing toward petitioner at the time of the shooting. In that statement he also said that after the shot he saw Fagan fall and then saw petitioner walk toward Fagan, point his arm down and fire another shot. One Edward Wyatt testified at the post-conviction hearing that while he was in the State's Attorney's office being questioned about this crime he heard an assistant State's Attorney tell Matthews that he "had something on him" and that if Matthews would come right out and say that Fagan was standing still at the time of the shooting things would go easier with him. The testimony of Matthews and Wyatt was the only testimony at the post-conviction hearing in support of petitioner's charge that the State knowingly used perjured testimony to convict him.

The assistant State's Attorney who was alleged to have induced Matthews to testify falsely testified at the post-conviction hearing. He admitted that he might have talked with Matthews about certain indictments which were pending against him although he had no recollection that he had done so. He positively denied threatening to revive these indictments unless Matthews changed his testimony and denied any knowledge that Matthews's testimony was false. The attorney who represented petitioner at the time of his trial testified for the State at the hearing. He had interviewed Matthews several days before Matthews's conversation with the assistant State's Attorney and had taken notes on that interview. According to these notes, Matthews told the attorney that Fagan and petitioner were about 8 or 10 feet apart at the time of the shooting and that Fagan was advancing toward petitioner until petitioner pulled out a gun and pointed it at Fagan. When petitioner pointed the gun at Fagan, he stopped and immediately thereafter the shot

was fired. He told the attorney that he did not see the second shot fired. The attorneys' memorandum of his interview with Matthews contained a notation that Matthews didn't want to hurt petitioner but he was afraid. He also told the attorney that he had quite a medical background and had been told that he was schizophrenic. He told the attorney that he had previously been charged with burglary and armed robbery and was convicted of the lesser offense. This attorney testified that he had planned to base his defense upon a claim of self-defense and that in spite of his written memoranda to the effect that Fagan had stopped when petitioner pointed a gun at him, he somehow had the impression that Fagan was the aggressor in the situation and that petitioner had fired the shot in self-defense. He testified that he was taken by surprise when Matthews testified at the trial that Fagan had stopped walking when the first shot was fired and was also surprised when Matthews testified that he saw petitioner fire the second shot.

A post-conviction proceeding is civil in nature and in such a proceeding the petitioner has the burden of showing that he was deprived of a substantial constitutional right. (*People* v. *Hall,* 413 Ill. 615.) The knowing use of perjured testimony by the State in a prosecution for a criminal offense is a violation of the accused's rights under both the Federal and State constitutions and proof of such violation in a proceeding under the Post-Conviction Hearing Act will justify relief under the act. (*People* v. *Wakat,* 415 Ill. 610; *People* v. *Jennings,* 411 Ill. 21.) The evidence in support of the charge consisted of Matthews's testimony that he had lied at the original trial under pressure from the assistant State's Attorney and Wyatt's testimony, which, to some extent, provided corroboration of Matthews's testimony. Opposed to this testimony, we find that the assistant State's Attorney denied that he induced Matthews to testify falsely and denied any knowledge of the alleged falsity of Matthews's testimony. Matthews told petitioner's own

attorney that Fagan had stopped at the time the first shot was fired. This statement was made prior to the time when the assistant State's Attorney is alleged to have induced Matthews to so testify. Matthews's statement to the police the day after the shooting was inconclusive on this point and was consistent either with the testimony that Fagan was advancing or that he had stopped. The credibility of the testimony in a post-conviction case, as in other cases tried by the court without a jury, is a matter for the trial judge to determine, and unless something appears to show that the determination by the trial judge was manifestly erroneous, the trial judge, who had an opportunity to see and hear each witness, should be upheld. (*Davies* v. *People,* 10 Ill.2d 11.) Matthews either committed perjury at the original trial or at the post-conviction hearing, and the trial judge at the post-conviction hearing determined that his testimony at the hearing was false. Considering the fact that his testimony at the trial was the same as he had told petitioner's attorney before trial, and also considering Matthews's criminal background and the fact that he had been told he was schizophrenic, we are not disposed to disturb the trial judge's finding, and the judgment is therefore affirmed.

*Judgment affirmed.*