(No. 41944.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
RUSSELL HARPER, Appellant.

*Opinion filed November 26, 1969.*

William E. Nelson, of Hoopeston, appointed by the court for appellant.

William J. Scott, Attorney General, of Springfield, and John Morton Jones, State's Attorney, of Danville, (Fred G. Leach, Assistant Attorney General, and Larry P. Cramer, Special Assistant State's Attorney, of Champaign, of counsel,) for the People.

Mr. Justice Burt delivered the opinion of the court:

After waiving indictment by the grand jury, petitioner,

Russell Harper, pleaded guilty in the circuit court of Vermilion County to an information charging him with burglary and theft. Following a hearing on his application for probation and denial thereof he was sentenced to the penitentiary for a term of two to ten years. Subsequently he filed a petition under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1967, ch. 38, pars. 122—1 *et seq.*), alleging substantial denial of his constitutional rights in the original proceedings in which he was convicted. Specifically, petitioner alleged that he would not have pleaded guilty to the charge except for the fact that he had given a written confession to certain sheriff's deputies without presence of counsel after prolonged periods of questioning and while being subjected to incessant duress. The petition further stated that prior to giving the statements petitioner was not advised that any statements might be used against him; that he had the right to remain silent; that he had the right to consultation with and presence of counsel and that if he was unable to hire an attorney one would be provided for him. Additionally, it was stated that court-appointed counsel was of very low caliber and amounted to no counsel at all. A full hearing was had on the petition at which petitioner was represented by court-appointed counsel other than the public defender as he requested. Petitioner appeals from the order of the circuit court dismissing the petition, contending that the court erred in finding that the evidence did not establish his claim of alleged violations of his constitutional rights.

In relating the circumstances in connection with the giving of the confession petitioner testified that he was arrested on a warrant on August 1, 1967, and taken to the Vermilion County jail at about 8:30 P.M. where he was interrogated on suspicion of burglary by two deputies and a statement was given by him. He was not advised of his right to counsel or told that anything he said might be used against him. He signed another statement the next day which was read to him before signing but no warnings were given as to the

right of silence or to the presence or consultation of counsel. In all he was questioned about three times for about one and one-half hours each time over a period of three days before his release on bond. On cross-examination petitioner admitted that no one had mistreated him physically and further stated that the deputies had not threatened him or forced him to sign the statements.

The testimony of three deputy sheriffs was directly contrary to petitioner's on the question of advising him as to his constitutional rights prior to taking the statements. Their testimony, taken together, establishes that on both occasions when statements were taken petitioner's constitutionally protected rights were fully explained to him, including a warning that statements might be used against him, the right of silence and the right to counsel. This was further shown by certain exhibits signed by petitioner in which he acknowledged that he understood his rights and their extent specifically.

On the issue of competency of counsel petitioner testified that he visited the public defender one time in his office and conversed with him for about 20 minutes. It was his recollection that he told the attorney he had given the statements but didn't remember whether he had been asked by him whether or not petitioner's rights had been explained at the time. Petitioner said the public defender told him that if he pleaded guilty he would receive a sentence of one to three years but did not advise him as to what plea he should enter.

The public defender's version of this conference with petitioner was quite different. He testified that petitioner was advised by him of the consequences of a plea of guilty to the charge but was not told what his actual sentence would be or that any deal had been made with the State's Attorney. According to counsel, petitioner said that he had given statements to the officers after they had gone through "the bit about constitutional rights and so forth" and that at no time

did petitioner state that he was forced to give any statement or statements. When asked what he thought the public defender could do for him Harper replied that he wanted counsel to make the "best deal possible". He was reminded that in view of his record he would have difficulty in getting probation. This one conference between petitioner and the public defender was the only one held except those which took place at the time of court appearances. The attorney stated he had no occasion to talk to the officers about the statements given by petitioner.

A post-conviction proceeding is civil in nature. (*People v. Clements,* 38 Ill.2d 213, 215; *People v. Alden,* 15 Ill.2d 498, 502.) In such an action the petitioner has the burden of proof and must show that he has been deprived of a substantial constitutional right before he is entitled to any relief. (*People v Somerville,* 42 Ill.2d 1, 11; *People v. Caise,* 38 Ill.2d 486, 489.) The credibility of the testimony in a post-conviction case, as in other cases tried by the court without a jury, is a matter for the trial judge to determine and unless something appears to show that the determination by the trial judge was manifestly erroneous, the trial judge, who had an opportunity to see and hear the witnesses, should be upheld. *People v. Caise,* 38 Ill.2d 486, 489; *People v. Alden,* 15 Ill.2d 498, 503; *Davies v. People,* 10 Ill.2d 11, 15.

There is no question about the procedural safeguards required in connection with the taking of statements during interrogation as set forth in the guidelines in *Miranda* v. *Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The fact is, however, that the confessions here involved were never offered or used in evidence against petitioner and there is no way of knowing whether or not the State's Attorney would have used them if there had been a trial rather than a plea of guilty. The constitutional validity of the confessions becomes involved only if we assume, as petitioner contends we should, that the statements given operated to coerce him into pleading guilty against his will and better

judgment. Only the naked assertion of petitioner supports the view that he would never have pleaded guilty if he had not given the statements.

Assuming, however, that the validity of the confessions is fairly involved, the evidence clearly negatives any constitutional infirmity. There is no evidence whatever to support the assertion made in the petition that the statements were given because of threats, coercion, fear and duress. Petitioner gave no such testimony at the hearing and that of the officers negatives any conclusion that there was any sort of mistreatment. On the issue of whether or not the *Miranda* warnings and explanations were in fact given we must balance the testimony of the three officers which consistently affirms, as against that of the petitioner which denies. Of considerable significance on this question is the testimony of the public defender who stated that during their interview petitioner told him that the statements had been given after the officers had gone through the "bit about constitutional rights."

As to petitioner's contention that he was so poorly represented by the public defender that in fact he received no representation at all, his principal complaint seems to be that counsel did not question the officers who received the statements for the purpose of ascertaining the circumstances under which they had been given. It would appear, however, that there was nothing to motivate this course of action after petitioner had told his attorney that the officers had explained his constitutional rights before the statements were given. Another complaint concerns the time spent by counsel outside of court which amounted to one interview of about 20 minutes. Just what could have been accomplished by the expenditure of more time in the face of petitioner's attitude we fail to perceive. When asked what counsel could do for him he could suggest only that he make the "best deal he could" for him. At no time did he deny his guilt or protest his innocence. It is also suggested that counsel should

have recommended whether petitioner should plead guilty or not guilty. We disagree. The record shows that counsel explained petitioner's rights, told him of the possible consequences of a guilty plea and mentioned that in view of his prior record, probation would probably be denied. With this information at hand the decision to plead guilty or not guilty rested with petitioner.

The question whether a defendant was adequately represented by competent counsel must be answered solely from the circumstances of each particular case. (*People* v. *Georgev*, 38 Ill.2d 165, 169, *cert.* denied 390 U.S. 998; *People* v. *Francis*, 356 Ill. 74, 77.) Before a conclusion of inadequate representation can be reached defendant must demonstrate the actual incompetence of counsel as reflected by the manner of carrying out his duties as a trial attorney and it must further appear that substantial prejudice results therefrom, without which the outcome would probably have been different. (*People* v. *Georgev*, 38 Ill.2d 165, 169, *People* v. *Dean*, 31 Ill.2d 214, 218; *People* v. *Morris*, 3 Ill.2d 437, 449.) Petitioner's dissatisfaction with counsel's representation must clearly result from afterthought because, in the original proceedings, the record clearly shows that petitioner, in responding to direct questions by the court, repeatedly assured the court that he had had adequate time to discuss his case with his attorney; that he felt he had been well represented; that counsel had not done anything that petitioner requested he not do, nor failed to do anything he requested that he do. In view of the undisputed facts in this record the contentions that petitioner's counsel was incompetent or that he was prejudiced by the manner in which representation was given are entirely without merit.

From what has already been said it must clearly appear that petitioner failed to prove that there was a substantial infringement of his constitutional rights and that the decision of the trial court dismissing the petition should be affirmed. Though not necessary to a decision here it is worthy of note

that after briefs had been filed by both sides in this case petitioner pleaded guilty in the circuit court of Vermilion County to a charge of perjury based upon testimony given at the hearing in the post-conviction proceedings. Specifically, petitioner admitted that he lied when he testified that one of the deputies had not explained his constitutional rights prior to taking the statement. The State asked and was granted leave to file the record and an additional brief relating to the perjury proceedings. From the transcript of the testimony taken at the hearing in aggravation and mitigation in the perjury case it appears that petitioner admitted that most of his testimony given in the post-conviction hearing was untrue. While the same result would have been reached without knowledge of these later developments they do serve to confirm our judgment that the order of the trial judge dismissing the petition after hearing in this case was clearly right.

*Judgment affirmed.*